This is the 25th day of the 2-4-0 event. Karen Miller v. Experian Information Solution call. For one minute, 15 minutes per side. Please respond if you need help. Your Honors, may it please the Court, my name is Sam Hahn and I represent Karen Miller, the appellant in this matter. May I please reserve three minutes for rebuttal? Yes. In 2013, 1.6 million consumers, including Karen Miller, ordered their own consumer credit file from TransUnion using TransUnion's website. The lower court holds that none of those consumer credit reports that were disclosed to the consumers are governed by the FCRA at all. That decision is harmful to the consumers, contrary to statutory language, contrary to public policy, and contrary to precedent, and this Court should reverse. At the heart of the matter, this Court has already held that the FCRA is remedial legislation, which is to be liberally construed in favor of the consumer. And the lower court's decision is contrary to a liberal construction of the FCRA, and in fact, the lower court's construction of the statute is harmful to the consumer. Also, this case comes before the Sixth Circuit today on a procedure of a motion for summary judgment, and under summary judgment, Karen Miller is the non-movement, and all of the facts should have been viewed in the light most favorable to the non-moving party, my client. And the lower court should not have engaged in fact-finding, which it did, and therefore this Court should reverse. We'll begin with the language of the statute, Section 16—15 U.S.C. Section 1681G. How do you get around the fact that you may have sued the wrong party? I'm sorry, Your Honor, I'm not sure what you're referring to when you say that we may have sued the wrong party. Well, I thought you sued a subsidiary of TransUnion or something. We sued TransUnion itself. TransUnion has come back and said that we've sued the wrong party. It's our position that we've sued the right party because all of the information that Dr. Miller received in response to her request came from TransUnion itself. It was delivered from TransUnion to Miller via its wholly-owned subsidiary using the TransUnion website, but at the heart of it, all of the information did come from TransUnion. It did not come from TransUnion Interactive. And the evidence for that is actually found in the record. TransUnion produced two reports, one in June 2014 and one in July of 2014, which clearly show that those reports came from TransUnion, but it was merely delivered to the consumer by TransUnion Interactive. And those two records from June 2014 and July of 2014 clearly show that the person that ordered the report was Karen Rebecca Miller, that it was ordered on October 3, 2013, and it was delivered via TransUnion Interactive 1. And in those same reports, there's a second entry, a second order that shows that TransUnion Interactive ordered a report on October 3 as well. And so while TransUnion Interactive, TUI might have ordered their own report, there's no doubt that in the record, Karen Miller ordered her own report as well, and that report originated with TransUnion, not with TransUnion Interactive. If we want to focus this case down to the heart of it, there are some things that are not disputed in this case. First of all, TransUnion fully concedes that disclosures to consumers are governed by Section 1681G. And they also concede that if this October of 2013 report that Miller ordered is governed by 1681G, then it should have included all of the information that was in her credit file, including all of the promotional inquiries. TransUnion also concedes that that October report that Miller ordered didn't include any of the promotional inquiries. And finally, TransUnion concedes that all of those promotional inquiries that were omitted from that October of 2013 report were intentionally omitted, deliberately omitted. And we looked at the file on that. The record at page ID 1053, this is doc number 68, TransUnion certifies to the court, quote, because the credit monitoring report plaintiff purchased was designed to replicate a credit report, it is not surprising that it did not contain any promotional inquiries. And so at the heart of it, there's no question that the omission of the information that should have been in that report was deliberately omitted. And that's one of the errors that we bring to this court is that the lower court found that there was no willfulness, and the standard that the lower court used was an improper standard. The language of the order on page 1942 in the record is, there is no willful noncompliance when defendant exhibit no ill will toward the plaintiff and acted to fix the alleged problem. The question of whether or not... Isn't that because they argue that the report Karen received was a credit monitoring report, and it was their belief that it necessarily needed to exclude that type of information for that type of report. It was not a credit report. And that's where I think the lower court made the error, and I think TransUnion made a bad argument as well. The lower court held that there was a credit monitoring report, this third type of report that's not governed by the FCRA at all. And unfortunately, if we look at the consumer reports or the structure of the statute, the statute divides reports into two categories. One is a consumer disclosure where a consumer orders their own information. The second one is a credit report where a third party orders the consumer's information. And there's no third category of reports. The district court in this case held that there is a third category of reports, one that's not governed by the FCRA at all, and essentially said that this credit monitoring report is a disclosure that a consumer orders for the consumer itself, but it's not governed by the FCRA. And the plain language of the statute shows that a consumer disclosure is a file that is revealed to the consumer. So if we're looking at Section 1681G, the plain language of the statute says that if the consumer orders the information, it's governed by 1681G. If a third party orders the disclosure, it's governed by 1681B. But there's no third category where the consumer can order something and it's not governed by the FCRA at all. That would leave such a gaping hole in the FCRA that anybody could designate their reports as a credit monitoring report and essentially escape liability under the FCRA. Secondly, there's court precedent that shows that if the consumer orders the information, the consumer's own information, that falls under Section 1681G. And this is Johnson v. Equifax from the Southern District of Alabama, which held that a consumer reporting agency's file that it reveals to the consumer and not a third party is governed by 1681G. And also in 2004, Spector v. Equifax from the District of Connecticut holds that when a file is released to a consumer, the file is termed a consumer disclosure under 1681G. And so here, if we were to liberally construe the FCRA in favor of the consumer, to create an entire category of documents called consumer credit monitoring reports that's not governed by the FCRA at all would be contrary to the liberal construction that favors the consumer. As a matter of fact, it would be harmful to the consumer because the 1.6 million people that ordered the reports in 2013 alone have no remedy under the FCRA had there been a violation for those particular reports. You cited two district court cases. Are there any contrary district court cases? The only cases that I could find, Your Honor, were these two that hold that if there is a credit, if it's disclosed to the consumer, then it falls under 1681G. Disclosed to a third party, it falls under 1681B. I couldn't find a case that held that there was a third category of reports that didn't fall under the FCRA at all. We're asking this court to reverse the lower court's decision because, number one, the statute, the plain language of the statute, shows that 1681G governs disclosures to the consumer, and here there is evidence in the record to show that Miller ordered Miller's own report from TransUnion, and TransUnion provided that information. It just so happened to deliver it through its own wholly owned subsidiary, TransUnion Interactive. If Miller had ordered it from TransUnion Interactive, would you be able to prevail? If Miller had ordered it from TransUnion Interactive, if that information was sent to TransUnion, we would still be able to prevail because the order was made from TransUnion. And secondly, the record does show that the order was sent to TransUnion, and TransUnion was fully aware that that order came from the consumer for the consumer's own credit file, and that TransUnion did transmit that information from TransUnion through its subsidiary to the recipient, who was the consumer. And so at the end of the day, again, we're on a posture here from summary judgment, where if there are facts showing that the order was to TransUnion, TransUnion received that order and sent it back to the consumer, those facts alone should have been sufficient to survive summary judgment. And if the district court finds that the order was from TransUnion Interactive and not from TransUnion, then it again shows that the lower court engaged in impermissible fact finding. At the heart of it, Your Honor, there are sufficient facts to survive summary judgment, and also the construction of the FCRA, which includes an entire category of documents that is not governed by the FCRA, would be harmful to the consumer. And for that reason, we ask this court to reverse the lower court's holding. So if I could just summarize in terms of where you say the fact dispute is. You say that you ordered it from TransUnion, that TransUnion received the order, and TransUnion sent back the information to you, and that at least there are facts that support your position, and that that is the crux of your claim that you have a 1681G violation here. Yes, Your Honor, and those facts actually do come from TransUnion's own evidence. And secondly, in terms of willfulness, I don't think that there's a dispute at all that TransUnion does concede that they deliberately omitted all of this information. So if the October 2013 report falls under Section 1681G, then willfulness is established, or at a minimum, there's a genuine issue of material fact with reference to willfulness. Thank you. Thank you, Your Honor. Good morning, Your Honor. May it please the court, my name is William Brown, and I'm one of the attorneys for TransUnion LLC in this matter. The record in this case demonstrates that plaintiff has not provided evidence on several key components of her case-in-chief. With respect to the relationship between TransUnion and TUI, Ms. Miller presented no evidence, conducted no discovery. The only evidence in the record below is that there are two separate legal entities, which must control unless the plaintiff puts forward evidence suggesting that you can pierce the corporate rail or ignore the corporate identity. What about his response that she sent her request to TransUnion? Well, we know that's not true from the record. She sent her request to TUI, TransUnion Interactive. So where is that in the record? Just so I can...  One of you is wrong, I guess. Right. So the record will show that Ms. Miller contacted TUI. There is a form that she filled out. The TUI service agreement, which she read and agreed to before the credit monitoring report was provided to her. That's in the record, but I'll also read it because I think it dispenses with much of the plaintiff's argument on appeal. Can you give us the page number, the ID page number? Yes. It is RE77-10, and it reads as follows. The Fair Credit Reporting Act allows you to obtain from each credit reporting agency a disclosure of all the information in your credit file at the time of the request. Full disclosure of information in your file at a credit reporting agency must be obtained directly from such credit reporting agency. The credit reports provided or requested through our site are not intended to constitute the disclosure of information by a credit reporting agency as required by the Fair Credit Reporting Act or similar laws. Under the Fair Credit Reporting Act, you are entitled to receive an annual free disclosure of your credit report from each of the national credit reporting agencies. For more information, visit the credit report section in the learning center available from most pages of the website. So plaintiff was aware of what she ordered, from whom, and the ability to order a consumer disclosure if that was her desire. I do believe that plaintiff misstated the content of Section 1681G. It does not say when a credit reporting agency provides any report that it's a consumer disclosure. What it does say is when the credit reporting agency receives a request from a consumer, it must do certain things. In this case, TransUnion never received such a request. Plaintiff's counsel referred to evidence in the record regarding inquiries on later credit reports. Inquiries appear at the end of the credit report and designate every time a consumer's credit information was provided to a third party. Pursuant to Section 1681B, the permissible purpose section, what that evidence shows is that TransUnion Interactive requested credit information on behalf of Ms. Miller that was provided, reformatted as a credit monitoring report, and provided to Ms. Miller. There's no evidence here that Ms. Miller was confused or that she wasn't able to comprehend the very clear language that I've read to you. In fact, one of the things that the district court found was that Ms. Miller presented no evidence at all on anything, neither on liability nor on damages. I don't think it's fair to say that the FCRA prohibits anyone from producing any product that isn't either a consumer report or a consumer disclosure. When I was inquiring at the end of your opponent's argument about sort of the simple format of the case, it was that the facts show that Miller made an order to TransUnion, TransUnion received the order, TransUnion sent back information to the consumer, and your opponent says there's a fact dispute on all of that. Now, I understand that your position is that it's TUI, not TU, but are there facts that support your opponent's position such that summary judgment obviously would not be appropriate, i.e., are there facts that show that she made the order to TransUnion, TransUnion received the order, and TransUnion sent back information? No, Your Honor. Are there facts about none of those, or is there one key fact that is missing? There's facts supporting none of those, because what happened was Ms. Miller requested a credit monitoring report from TUI. TUI then contacted TransUnion for credit information in the form of a credit report, which would be covered under the FCRA. But once TUI received that information, they formatted it as a credit monitoring report, which is a service commonly offered to consumers in the millions nationwide. This is not an unusual procedure or anything that's going on behind closed doors. So the key objection that you're making is that it was a credit monitoring report that was given to her by TUI with information that TU provided to TUI. That's correct. And that a credit—you can feel free to tell me where I'm wrong, but your position also entails the view that a credit monitoring report is not covered by 1681G. Is that right? Well, Plaintiff never argued that below, and I guess that's the first point, is that much of what Plaintiff was arguing today was never presented to the district court below. So there's really no record for this, and certainly the district court never had an opportunity to weigh in on that. But I would say that a credit monitoring report is not covered under 1681EB or 1681G. It's a direct-to-consumer product offered to consumers to help them monitor their credit. And the way that's done is by providing them with a report that looks exactly like what their creditors would receive should they apply for credit. That's clearly explained in the materials, and there's no doubt that Ms. Miller knew that's what she was requesting and receiving. In her deposition, she confirmed that she signed up for credit monitoring services and confirmed that within the period for cancellation, she called and canceled so that she wouldn't be charged for it. So my understanding of what the district court did was that it decided that there was not a consumer reporting agency involved because the request was not made to TU but was made to TUI. Am I correct in summarizing what the district court found? I think what the district court found was that a plaintiff with a burden of proof failed to provide any evidence whatsoever as to the relationship between TUI and TransUnion. And the court could not assume without more that TUI was a credit reporting agency or that anything that it issued was subject to the FCRA. That was plaintiff's burden to demonstrate, and in the absence of that burden, the district court was well within his rights to grant our motion for summary judgment. And that's because there's no evidence, according to the district judge and you, that TUI is a consumer reporting agency. That's correct. Plaintiff didn't even argue that below, Your Honor. What plaintiff argued was that TUI and TransUnion were the same entity. Clearly, that's not the case because the only evidence of the record says they are corporate distinct entities. But there is evidence that TransUnion is a consumer reporting agency. Oh, TransUnion is definitely a consumer reporting agency, but there's no evidence with respect to the relationship with TUI and therefore, by extension, whether TUI is a credit reporting agency. I'd say under the circumstances, that's going to be left for another case where the record is properly developed. So, in conclusion, I would just like to reiterate that credit monitoring is a very common practice in the United States. It goes on hundreds of thousands of times a day. The product and the process are very well described in the materials that the consumers review prior to getting their credit monitoring report, including the language that I read from the TUI service agreement, which lends itself to no confusion nor any issue of fact as to whether or not the plaintiff knew exactly what she was ordering and what she was getting and, importantly, how to go about getting a consumer disclosure if that's what she wanted to do. If there's no further questions, thank you. Please. May it please the Court. I only have three points on rebuttal, Your Honor. First, Judge Moore, you asked whether there was evidence in the record to show that Dr. Miller ordered the report from TransUnion in itself and not from TransUnion Interactive. Opposing counsel had said that the record is completely devoid of that evidence. I'd like to point to some of the portions of the record where it does show that Miller did order her own consumer report from TransUnion. Page ID 1940, and this comes from the judge's order because this is one of the things that he found that he said was in the evidence but disregarded. At her deposition on August 12, 2014, Miller testified that she obtained the October 2013 report by going through annualcreditreport.com website to a TransUnion website. He promptly discounts that, saying, whatever she thought she might have gone to or ordered, she was mistaken. That's a factual inquiry that's improper. In the record, Page— It would have been consistent with the agreement that she signed online, reflecting the fact that she was making the inquiry specifically to DUI. And that brings me to one of the points that I was going to raise, but I'll raise it now, is TransUnion argues that a consumer would clearly see that language and understand it, but what TransUnion neglects to mention is that that agreement is actually buried in a click-wrap agreement that's not on the main page of the delivery itself. And so when the consumer signs up for it, it says, this is what you're agreeing to, and there's a link at the bottom of the page. And truth be told, I don't think any of the consumers who are the least sophisticated consumers will click on that, read the entire agreement, and understand that they're not ordering a consumer disclosure under 1681G. So that's one of the points that I wanted to make. But going back to the evidence in the record, Page ID 19— Do you have some independent proof other than my client says she ordered it from TransUnion? I do, and that comes from Record 63-3 and 63-4, Page ID 935 and 952. Again, if we look at the record, it doesn't show that TransUnion ordered something on behalf of Miller. It shows that Miller ordered it via TransUnion Interactive. And so the record that TransUnion has objectively shows that the person that ordered the report from TransUnion was Miller, not that TUI ordered it on Miller's behalf. And so that supports Miller's contention she had actually ordered it from TransUnion. Also in the record— If I could go back a step. You referred us to Page ID 1940, is that right? Yes, Your Honor. That's not a deposition. That looks like it's a brief. Page ID 1940 is from Document 102, which is the amended entry in order. And the reason that I'm citing to that is because that section of the order actually shows, the judge says, here's what Miller submits as her evidence, but I don't find it convincing. And the I don't find it convincing part is a fact finding, which is improper on summary judgment. Lastly, TransUnion says that we never argued the 1681G issue in the lower court, but it's in the amended complaint itself, and it was brought up with the lower court. Thank you, Your Honor. Thank you both for your argument. The case will be submitted. Would the clerk call the next case, please?